UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,                     Case No. 15-CR-0233 (PJS/FLN)

                    Plaintiff,

v.                                                                ORDER

CHARLES LYNCH PETTIS,

                    Defendant.

Jeffrey S. Paulsen, UNITED STATES ATTORNEY'S OFFICE, for plaintiff.

R.J. Zayed, DORSEY & WHITNEY LLP, for defendant.

Defendant Charles Lynch Pettis is awaiting sentencing after pleading guilty to

being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  He has

made numerous objections to the presentence investigation report ("PSR").  Most

importantly, he objects to the PSR's determination that he is an armed career criminal

under 18 U.S.C. § 924(e), a determination that would change the ten-year statutory

maximum for his offense to a fifteen-year statutory minimum.

Normally, when a defendant asserts objections to a PSR, this Court rules on those

objections from the bench.  But because several of Pettis's objections raise difficult legal

issues that are likely to arise in other cases, the Court has addressed Pettis's objections

in this written order.

## I.  VIOLENT FELONIES / CRIMES OF VIOLENCE

Pettis has one prior conviction for second-degree burglary under Minn. Stat. § 609.582, subd. 2(a)(1), three prior convictions for simple robbery under Minn. Stat. § 609.24, and two prior convictions for first-degree aggravated robbery under Minn. Stat. § 609.245, subd. 1.  The parties dispute which, if any, of these convictions count as a "violent felony" for purposes of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1), or as a "crime of violence" for purposes of §§ 2K1.2 and 4B1.2 of the United States Sentencing Guidelines (U.S. Sentencing Comm'n 2015).

Any ordinary person—using words in their ordinary way—would likely conclude that *all* of these (except, perhaps, the burglary) were crimes of violence.  But the ACCA and the Sentencing Guidelines do not use words in their ordinary way.  Having looked carefully at the record and recent case law, the Court is constrained to conclude that only one of Pettis's robbery convictions is a violent felony under the ACCA.  But all five of his robbery convictions are crimes of violence under the Guidelines.

### A.  Conviction for Second-Degree Burglary

Pettis argues that his conviction for second-degree burglary is not a violent felony for purposes of the ACCA.  The Court agrees.

A burglary is a violent felony under the ACCA only if it has "the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Taylor v. United States*, 495 U.S. 575, 599 (1990). The defendant must intend to commit a crime at the moment of his unlawful entry into the building—or at the moment that he unlawfully "remains" in the building. *United States v. McArthur*, No. 14-3335, 2016 WL 4698285, at *8 (8th Cir. Sept. 8, 2016).

> In Minnesota, second-degree burglary can be committed in one of two ways:
>
> First, a defendant can be convicted of burglary if he "enters a building . . . with intent to commit a crime." And
>
> Second, a defendant can be convicted of burglary if he "enters a building . . . and commits a crime while in the building."

Minn. Stat. § 609.582, subd. 2(a). The first type of burglary would be a generic burglary under the ACCA, but under *McArthur*, the second type of burglary would not. *See id.* at *7-8 (interpreting identical language in Minn. Stat. § 609.582, subd. 3).

Here, the Court cannot find that Pettis was convicted of the first type of burglary—that is, of generic burglary under the ACCA. The question is whether Pettis "was charged only with a burglary of" the generic type or was otherwise "necessarily" found guilty by the jury of a generic burglary. *Taylor*, 495 U.S. at 602. In answering that question, the Court may consult only a limited set of documents. In most cases, the Court's inquiry must be limited to the charging document, plea agreements and

colloquies, jury instructions, and "bench-trial findings and rulings." *Shepard v. United States*, 544 U.S. 13, 25 (2005).

Here, the complaint does not "narrow[] the charge to generic limits." *Id.* On the contrary, the complaint leaves open the possibility that Pettis could have been convicted of second-degree burglary for simply "enter[ing] a dwelling, without consent and . . . commit[ting] a crime, while in the building," even if he did not intend to commit a crime at the moment that he unlawfully entered or unlawfully remained in the building.

The jury instructions are similarly broad. They instruct the jury that anyone who enters a building without consent and "commits a crime while in the building" can be convicted of second-degree burglary. Therefore, when the jury returned a guilty verdict, it did not "necessarily" find Pettis guilty of either entering a building or remaining in a building with the intent to commit a crime.

Because neither the charging document nor the jury instructions conclusively show that Pettis was convicted of a generic burglary, the Court SUSTAINS his objection to the PSR's treatment of his burglary conviction as a violent felony for purposes of the ACCA.

Pettis's burglary conviction also cannot be treated as a crime of violence for purposes of the Sentencing Guidelines. As a general matter, the Court is required to

apply the Guidelines Manual that is in effect at the time of sentencing.  *See Dorsey v. United States*, 132 S. Ct. 2321, 2341 (2012) (citing 18 U.S.C. § 3553(a)(4)(A)(ii)).  And thanks to an amendment to the Guidelines that took effect on August 1, 2016, burglary is no longer defined as a "crime of violence" in § 4B1.2(a)(2) of the Guidelines.  The Court therefore SUSTAINS Pettis's objection to the PSR's treatment of his burglary conviction as a crime of violence for purposes of the Guidelines.

### B. Convictions for Simple Robbery

Pettis argues that his three prior convictions for simple robbery do not qualify as violent felonies for purposes of the ACCA.  Again, the Court agrees.

The PSR found that Pettis's simple-robbery convictions qualify as violent felonies under the ACCA's "force clause."  The force clause defines "violent felony" to include a crime that "has as an element the use, attempted use, or threatened use of physical force."  18 U.S.C. § 924(e)(2)(B)(i).  The Supreme Court has held that the term "physical force" means a "strong," "substantial," or "violent" degree of force that is "capable of causing physical pain or injury."  *Curtis Johnson v. United States*, 559 U.S. 133, 140 (2010).

In July, the Eighth Circuit held that simple robbery under Arkansas law was not a violent felony under the ACCA because it could be committed without the use of a strong, substantial, or violent degree of force.  *United States v. Eason*, No. 15-1254, 2016

WL 3769477, at *5-6 (8th Cir. July 14, 2016).  For example, pulling open a door that

someone is holding or grabbing someone's dress "lightly" would be enough to support

a simple-robbery conviction under Arkansas law.  *Id.* at *6 (citing *Fairchild v. State*, 600

S.W.2d 16, 17 (Ark. 1980)).

Minnesota's simple-robbery statute, like Arkansas's simple-robbery statute, does

not require the government to prove that the defendant used a strong, substantial, or

violent degree of force.  Indeed, unlike Arkansas, Minnesota does not even require the

defendant to use "*physical* force"—just "force."  *Compare* Minn. Stat. § 609.24, *with* Ark.

Code Ann. § 5-12-102.  This "force" can be as trivial as yanking on someone's coat, *see*

*State v. Nelson*, 297 N.W.2d 285, 286 (Minn. 1980), or "gentl[y]" crowding someone in an

elevator, *Duluth St. Ry. Co. v. Fidelity & Deposit Co. of Md.*, 161 N.W. 595, 595-96 (Minn.

1917).  Because the slightest contact with the victim is enough to support a conviction

for simple robbery in Minnesota, that offense does not have as an element the use of a

strong, substantial, or violent degree of force.  Therefore, under *Eason*, the Court must

find that conviction for simple robbery under Minn. Stat. § 609.24 is not conviction of a

violent felony for purposes of the ACCA.

The Court acknowledges that its finding is contrary to at least two Eighth Circuit

decisions holding that simple robbery in Minnesota is a violent felony under the ACCA.

*See United States v. Raymond*, 778 F.3d 716, 717 (8th Cir. 2015) (per curiam); *United States*

*v. Samuel Johnson*, 526 F. App'x 708, 711 (8th Cir. 2013), *rev'd on other grounds*, 135 S. Ct.

2551 (2015).  But *Eason* effectively abrogated those decisions.  Although *Eason* did not

explicitly overturn *Samuel Johnson*, *Eason* did explicitly overturn the case on which

*Samuel Johnson* primarily relied—*United States v. Sawyer*, 588 F.3d 548 (8th Cir. 2009)—as

being inconsistent with supervening Supreme Court precedent.  *See Eason,* 2016 WL

3769477, at *5-6.  And *Raymond* simply cited *Samuel Johnson* without elaboration.  *See*

*Raymond*, 778 F.3d at 717.  Under the circumstances, the Court concludes that *Samuel*

*Johnson* and *Raymond* are no longer good law, that *Eason* controls, and that, under *Eason*,

simple robbery in Minnesota is not a violent felony for purposes of the ACCA.

Although simple robbery is not a violent felony for purposes of the ACCA,

simple robbery is a crime of violence for purposes of the Sentencing Guidelines.  The

United States Sentencing Commission has always interpreted the term "crime of

violence" to include robbery.  At first, the Sentencing Commission identified robbery as

a crime of violence in an application note to § 4B1.2.  *See* U.S.S.G. § 4B1.2, cmt. n.1.

Because application notes are generally controlling,[1] the Eighth Circuit has also

consistently treated robbery as an enumerated crime of violence for purposes of the

---

[1] The Guidelines themselves are the equivalent of agency rules, whereas the Guidelines commentary is "akin to an agency's interpretation of its own legislative rules."  *Stinson v. United States*, 508 U.S. 36, 45 (1993).  Thus, the Guidelines commentary must be given "controlling weight" unless it violates the Constitution or a federal statute or is "plainly erroneous or inconsistent" with the Guidelines themselves.  *Id.* at 43-45.

Guidelines.  *See United States v. Rasheen Johnson*, 411 F.3d 928, 931-32 (8th Cir. 2005) (citing application note 1 to find that robbery is categorically a crime of violence*); see also United States v. Patterson*, 605 F. App'x 584, 585 (8th Cir. 2015) (per curiam) (same); *United States v. Jones*, 384 F. App'x 542, 542 (8th Cir. 2010) (per curiam) ("The district court correctly ruled that robbery is specifically included in the crimes of violence listed in U.S.S.G. § 4B1.2, comment (n. 1), and that a robbery specifically enumerated in § 4B1.2 is a crime of violence for career offender purposes . . . .").

Recently, the Sentencing Commission amended the text of § 4B1.2.  This amendment took effect on August 1, 2016.  As amended, § 4B1.2 of the Guidelines now lists robbery directly in the guideline itself as one of several enumerated offenses that are considered crimes of violence.  The commentary accompanying this amendment makes clear that this is just a reorganization—and not a substantive change—of § 4B1.2. *See* Supplement to the 2015 Guidelines Manual at 9 (stating that, even "prior to this amendment," robbery and ten other enumerated offenses were categorically crimes of violence); *id.* at 11 ("For easier application, all enumerated offenses are now included in the guideline at § 4B1.2; prior to the amendment, the list was set forth in both § 4B1.2(a)(2) and the commentary at Application Note 1.").  Essentially, the Sentencing Commission simply took the list of enumerated offenses that had appeared in

application note 1 and moved most of those enumerated offenses into the text of § 4B1.2.

In short, robbery has long been and continues to be an enumerated crime of violence for purposes of the Sentencing Guidelines.  Thus, it is irrelevant whether robbery also qualifies as a crime of violence under the Guidelines' force clause.  *Cf. United States v. Scott*, 818 F.3d 424, 434-35 (8th Cir. 2016) (defining the term "crime of violence" to mean any offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another" *or* that "is *enumerated* in the Guidelines *or accompanying commentary*") (emphasis added).

Because the Court is not relying on the force clause in finding that robbery is a crime of violence, *Eason* is inapplicable.  As discussed above, *Eason* partially abrogated *Sawyer*, but *Eason* was an ACCA case, not a Guidelines case.  In addition, *Eason* effectively overruled *Sawyer* only insofar as *Sawyer* concluded that robbery was a crime of violence under the Guidelines' force clause.  *See Eason*, 2016 WL 3769577, at *5-6. *Eason* said nothing to indicate that it intended to overturn years of Eighth Circuit precedent holding that robbery is an enumerated crime of violence under the Guidelines.

The Court therefore SUSTAINS Pettis's objection to the PSR's treatment of his three simple-robbery convictions as violent felonies for purposes of the ACCA, but the

Court OVERRULES Pettis's objection to the PSR's treatment of the same convictions as

crimes of violence for purposes of the Guidelines.

*C. Convictions for First-Degree Aggravated Robbery*

Finally, Pettis argues that his two prior convictions for first-degree aggravated

robbery do not qualify as violent felonies for purposes of the ACCA.  The Court agrees

as to his 2007 aggravated-robbery conviction, but not as to his 2008 aggravated-robbery

conviction.

On both occasions, Pettis was convicted under subdivision 1 of Minn. Stat.

§ 609.245.  Chief Judge John R. Tunheim recently found (and the undersigned agrees)

that this is a divisible statute—that is, a statute that explicitly identifies alternative

elements of an offense.  *See United States v. Jones*, No. 04-CR-0362 (JRT/RLE), 2016 WL

4186929, at *4 (D. Minn. Aug. 8, 2016).  A defendant can commit first-degree aggravated

robbery in two ways:

> First, a defendant commits first-degree aggravated robbery if, while
> committing a robbery, he "is armed with a dangerous weapon or any article
> used or fashioned in a manner to lead the victim to reasonably believe it to
> be a dangerous weapon."  Minn. Stat. § 609.245, subd. 1.
>
> Second, a defendant commits first-degree aggravated robbery if, while
> committing a robbery, he "inflicts bodily harm upon another."  *Id.*

The second way of committing first-degree aggravated robbery—which requires

proof that the defendant inflicted bodily injury on another person—is necessarily a

violent felony for purposes of the ACCA.  *See Crandall v. United States*, No. 02-CR-0190 (PAM/RLE), 2016 WL 3512137, at *2 (D. Minn. June 22, 2016).  Again, the ACCA's force clause defines "violent felony" to include a crime that "has as an element the use, attempted use, or threatened use of physical force."  18 U.S.C. § 924(e)(2)(B)(i).  The Supreme Court has held that knowingly injuring someone "necessarily involves the use of physical force."  *United States v. Castleman*, 134 S. Ct. 1405, 1414 (2014).  And the Eighth Circuit has recently held that *threatening* to injure someone necessarily involves the *threatened* use of physical force.  *See United States v. Lindsey*, 827 F.3d 733 (8th Cir. 2016).

The first way of committing first-degree aggravated robbery—which requires proof that the defendant was armed with a dangerous weapon—is not necessarily a violent felony for purposes of the ACCA.  The Minnesota Supreme Court has explicitly held that "a defendant who has [a weapon] on his person during [a] robbery commits armed robbery whether or not he uses the weapon or intends to use it."  *State v. Moss*, 269 N.W.2d 732, 735 (Minn. 1978).  Clearly, then, a defendant can be convicted of first-degree aggravated robbery without using, attempting to use, or threatening to use physical force.

The Court acknowledges that the Eighth Circuit reached a different conclusion in *United States v. Rucker*, 545 F. App'x 567 (8th Cir. 2013).  That was an appeal in one of

the undersigned's cases.  Before the undersigned, the defendant did not dispute that a conviction for first-degree aggravated robbery was a violent felony under the ACCA. On appeal, he did dispute that fact.  The Eighth Circuit rejected his argument, finding that his conviction was a violent felony under the force clause of the ACCA.

The Eighth Circuit's decision was unpublished, however, and thus, under Eighth Circuit Rule 32.1A, that decision is "not precedent" that binds this Court.  Moreover, the Eighth Circuit's analysis was perfunctory.  It did not cite anything but the language of Minn. Stat. § 609.245; it did not appear to recognize that the statute was divisible and thus that each element needed to be analyzed separately; and it made no mention of the fact that, under Minnesota case law, a defendant can be convicted of violating that statute without using or intending to use a dangerous weapon or inflicting bodily harm upon another.  And ultimately, this Court does not believe that the Eighth Circuit's decision can be squared with the Supreme Court's *Curtis Johnson* decision.

In sum, the Court finds that subdivision 1 of Minn. Stat. § 609.245 is divisible, that one of the crimes that it defines (inflicting bodily harm while committing robbery) is a violent felony for purposes of the ACCA, and that the other crime that it defines (being armed with a dangerous weapon while committing robbery) is not a violent felony for purposes of the ACCA.

The Court must therefore determine which type of aggravated robbery Pettis was convicted of in 2007 and then in 2008. If "the law under which the defendant has been convicted contains statutory phrases that cover several different generic crimes, some of which require violent force and some of which do not," the court may examine a limited set of documents to determine the elements of the crime that formed the basis for the defendant's conviction. *Curtis Johnson*, 559 U.S. at 144. These documents include the "charging document, written plea agreement, . . . plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard*, 544 U.S. at 16. "[P]olice reports," however, are off-limits, *id.*, as are "factual assertions within federal presentence investigation reports—even if the defendant failed to object to the reports—where the source of the information in the reports might have been from a non-judicial source," *Eason*, 2016 WL 3769477, at *6. It is the government's "obligation at sentencing to introduce the documentary evidence *Taylor* or *Shepard* requires if [the government] intend[s] to rely on [the defendant]'s prior felony convictions to support an ACCA enhancement." *United States v. Webster*, 442 F.3d 1065, 1069 (8th Cir. 2006).

In this case, the complaint[2] for Pettis's 2007 aggravated robbery conviction charges him with committing a robbery while "armed with a dangerous weapon." As discussed above, armed robbery is not a violent felony for purposes of the ACCA. Therefore, the Court SUSTAINS Pettis's objection to this conviction being treated as a violent felony under the ACCA.

In contrast, the complaint for Pettis's 2008 aggravated robbery conviction charges him with "inflict[ing] bodily harm upon" his victim. As discussed above, an aggravated robbery that involves the infliction of bodily harm is a violent felony for purposes of the ACCA. Therefore, the Court OVERRULES Pettis's objection to this conviction being counted as a predicate offense under the ACCA.

For Guidelines purposes, both of these aggravated robberies are treated as crimes of violence. As the Court has already explained, robbery is enumerated as a crime of violence under the Guidelines.

In sum, the Court finds that only Pettis's 2008 conviction for first-degree aggravated robbery—and not any of his other convictions—is a predicate conviction for

---

[2] These complaints are judicially cognizable under *Shepard* because they functioned as the charging documents for these convictions. *See United States v. Linngren*, 652 F.3d 868, 871-72 (8th Cir. 2011); *cf.* Minn. R. Crim. P. 1.04(f), 17.01, subd. 1 (specifying when a crime may be charged in Minnesota by complaint instead of indictment).

purposes of the ACCA.  For Guidelines purposes, however, all five of Pettis's robbery

convictions are crimes of violence as that term is used in §§ 2K1.2 and 4B1.2.

## II.  CRIMINAL-HISTORY POINTS

Pettis makes a number of objections to the assessment of criminal-history points

to various convictions.  Ruling on these objections is unnecessary because the objections

will not affect sentencing.  Fed. R. Crim. P. 32(i)(3)(B).  The PSR places Pettis in criminal-

history category VI—and, even if the Court sustains all of his objections, he will remain

in criminal-history category VI.  But in the interest of completeness, the Court will

briefly address the objections.

*First*, Pettis objects to the assessment of additional criminal-history points under

§ 4A1.1(e) for his two convictions for simple robbery in 2003 and his convictions for

first-degree aggravated robbery and second-degree burglary in 2008.  Section 4A1.1(e)

assesses additional criminal-history points for a prior sentence that "result[ed] from a

conviction of a crime of violence that did not receive any points under [U.S.S.G.

§ 4A1.1](a), (b), or (c)."  But an extra criminal-history point should be imposed only

when the defendant receives "*two* or more prior sentences as a result of convictions for

crimes of violence."  U.S.S.G. § 4A1.1, cmt. n.5 (emphasis added).  The Court has

already held that robbery but not burglary is a crime of violence under the Guidelines.

Therefore, the PSR was correct in assessing an additional criminal-history point for

Pettis's two robbery convictions in 2003. *See* PSR ¶ 42. But the PSR should not have assessed an additional criminal-history point for Pettis's 2008 convictions for robbery and burglary because only one of those two convictions was a crime of violence. *See* PSR ¶ 48. Pettis's objection to the assessment of additional criminal-history points under § 4A1.1(e) is therefore OVERRULED as to ¶ 42 but SUSTAINED as to ¶ 48.

*Second*, Pettis objects to the assessment of two criminal-history points for his May 22, 2007 conviction for theft. PSR ¶ 44. That conviction resulted in a 365-day sentence. Pettis received credit for 126 days that he had already served, and the remaining 239 days of his sentence was stayed.

The portion of a sentence that is stayed is not counted for purposes of § 4A1.1. *See* U.S.S.G. § 4A1.2(b)(2); *United States v. Urbizu*, 4 F.3d 636, 638 (8th Cir. 1993). By contrast, time credited for time served is counted, *see United States v. Garin*, 103 F.3d 687, 690 (8th Cir. 1996); *United States v. Drake*, 942 F.2d 517, 518 (8th Cir. 1991), unless the defendant did not "actually serve[] a period of imprisonment on" his sentence, U.S.S.G. § 4A1.2, cmt. n.2.

In *United States v. Fiorito*, this Court held that "a defendant does not 'actually serve' a period of imprisonment on a new sentence when the court imposing that sentence simultaneously gives the defendant credit for time served equal to the new sentence." No. 07-CR-0212 (PJS/JSM), 2010 WL 1507645, at *6 (D. Minn. Apr. 14, 2010)

-16-

(citing cases from the Sixth and Eleventh Circuits), *aff'd*, 640 F.3d 338 (8th Cir. 2011). *Fiorito* was referring to a situation in which a judge sentenced a defendant to two years in prison for one crime but simultaneously gave him two years of credit for time that he had already served on a *different* crime. *Fiorito* described this as "a kind of retroactive concurrent sentence. The court, in effect, imposes a new sentence, finds that the new sentence should have run concurrently with a previously imposed sentence, and thus treats the new sentence as if it had run concurrently with the previously imposed sentence." *Id.* at *5.

The situation is different when a defendant has been detained after being charged with a crime—and then, some weeks or months later, is sentenced to "time served" for *that crime*. In that situation, the defendant does "actually serve[] a period of imprisonment" for the crime, and the sentence of "time served" is counted for purposes of § 4A1.1.

In this case, it seems likely that Pettis served at least one day in custody on his theft charge, but the evidence in the record does not make this clear. Therefore, the Court SUSTAINS Pettis's objection to the assignment of two criminal-history points for his 2007 theft conviction. Only one criminal-history point should be assigned to that conviction (on account of §§ 4A1.1(c) and 4A1.2(a)(3)).

-17-

*Third*, Pettis objects to the assessment of two criminal-history points for his November 19, 2013 conviction for failing to register as a predatory offender.  PSR ¶ 51. After he was sentenced for this offense, he moved to withdraw his guilty plea.  The court granted his motion, vacated the conviction, and dismissed the case.

Under the Guidelines, convictions that have been set aside "for reasons unrelated to innocence or errors of law" should count towards the defendant's criminal history. U.S.S.G. § 4A1.2, cmt. n.10.  For example, if a state court vacates a prior conviction "for the express purpose of" manipulating the Guidelines *after* the defendant has already served his sentence, that sentence should still receive criminal-history points.  *United States v. Martinez-Cortez*, 354 F.3d 830, 832-33 (8th Cir. 2004).  Similarly, if the government offers to dismiss the underlying charge for a sentence that has already been imposed in exchange for the defendant's testimony in another case, that sentence should still count towards the defendant's criminal history.  *United States v. Ramsey*, 999 F.2d 348, 351 (8th Cir. 1993).

By contrast, convictions that have been expunged, reversed, vacated, or otherwise invalidated "because of errors of law," "subsequently-discovered evidence," or constitutional issues should not count towards the calculation of a defendant's criminal-history category.  U.S.S.G. § 4A1.2, cmt. nn.6, 10.  For example, if a state court allows a defendant to withdraw a guilty plea because his plea was not "knowing and

voluntary" and dismisses the original charge "in the interests of fairness," the defendant's conviction should not be assigned criminal-history points. *United States v. Lopez*, No. 03-CR-0302 (JRT/FLN), 2004 WL 2414843, at *1-2 (D. Minn. Oct. 18, 2004).

Like the defendant in *Lopez*, Pettis filed a motion to withdraw his guilty plea because of concerns over the plea agreement. He believed that there had been a "misunderstanding in the plea agreement" about the custodial credit that he would receive. PSR ¶ 51. The government has not pointed to anything in the record that would suggest that this dismissal was for an ulterior motive such as manipulating the Guidelines. The Court therefore SUSTAINS Pettis's objection to the assignment of criminal-history points to this conviction.

The Court ORDERS that the PSR be amended to reflect these rulings.

Dated:  September 19, 2016                         s/Patrick J. Schiltz
                                                 Patrick J. Schiltz
                                                 United States District Judge